IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID A. MAKOWSKI,     *

   Plaintiff,     *

   v.     *     Civil Action No. RDB 10-1844

BOVIS LEND LEASE, INC.,     *

   Defendant.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff David A. Makowski ("Makowski"), a Maryland citizen, brings this action against his former employer, Defendant Bovis Lend Lease ("Bovis"), which is incorporated in Florida and has its principal place of business in New York, for breach of contract (Count I), violation of the Maryland Wage Payment and Collection Act ("Wage Act"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* (Count II),[1] promissory estoppel/detrimental reliance (Count III), unjust enrichment (Count IV) and accounting (Count V) arising out of Bovis's failure to pay a Client Funded Bonus, Annual Bonus and severance pay allegedly due to Makowski. Plaintiffs bring suit in this Court based on diversity of citizenship. *See* 28 U.S.C. § 1332. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant Bovis's Motion to Dismiss (ECF No. 12) is GRANTED as to Count I (breach of contract), Count II (Maryland Wage Payment and Collection Act), Count IV(unjust enrichment as to the Annual Bonus and severance pay), and

---

[1] Makowski refers to his claim in Count II as Violation of the Maryland Wage and Hour Law, but his Complaint and Opposition brief cites to the provisions of the Maryland Wage Payment and Collection Act, § 3-501(c)(2) and § 3-507.1. Compl. ¶¶ 10, 17; Opposition at 24. Thus, this Court considers Makowski's wage claims to be brought under the Maryland Wage Payment and Collection Act.

Count V (accounting), but DENIED as to Count III (promissory estoppel/detrimental reliance) and Count IV (unjust enrichment as to the Client Funded Bonus).

PROCEDURAL ANALYSIS

Plaintiff Makowski argues in the first instance that Bovis's Motion to Dismiss is procedurally defective because it is based upon factual allegations outside of the Complaint. Makowski contends that "although this error would typically convert the motion into one for summary judgment, here the Defendant makes numerous statements of fact outside the scope of the Complaint, fails to provide any affidavit supporting its factual assertions, and has failed to properly authenticate the Exhibits it appends to its Motion." Opp'n at 8, ECF No. 19. In response, Bovis argues that a defendant may provide documents that are central or relied upon in a complaint when the plaintiff fails to attach such documents to the complaint himself. Reply at 2, ECF No. 20.

There is no question that this Court may consider the documents Bovis attaches to its Motion to Dismiss under certain circumstances. As this Court explained in *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678 (D. Md. 2001), it may "consider any documents referred to in the complaint and relied upon to justify a cause of action—even if the documents are not attached as exhibits to the complaint." *Id.* at 683 (finding defendant's attaching correspondence and an agreement that was relied upon in plaintiff's complaint to its motion to dismiss to be proper); *see also New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994) (citing *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (deeming a complaint "to include . . . any statements or documents incorporated in it by reference" and permitting a defendant to produce such materials when attacking the complaint)). In *Fisher v. Maryland Dept. of Public Safety and Correctional*

*Services*, No. 10-CV-0206, 2010 WL 2732334, at *1 (D. Md. July 8, 2010), this Court detailed the three options it has when a defendant attaches documents to a motion to dismiss:

> First, if the documents meet certain requirements, the court may consider them when evaluating the motion to dismiss. If the documents do not qualify for consideration at the motion to dismiss stage, the court has two other alternatives: (1) it can either entirely disregard the attached documents; or (2) under limited circumstances, it may convert the motion into a motion for summary judgment and consider all attached documents.

*Id*. at 2. Under the first approach, documents attached to the motion to dismiss may be considered, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009); *see also Walker v. S.W.I.F.T. SCRL,* 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (finding that to be considered, a document attached to a motion to dismiss must "be central or integral to the claim in the sense that its very existence, and *not the mere information it contains,* gives rise to the legal rights asserted.") (emphasis added). To the extent the allegations in the complaint conflict with those in such integral and authentic documents, the exhibits or documents prevail. *Fare Deals*, 180 F. Supp. 2d at 683 ("When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail.") (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

Thus, to the extent Bovis attaches documents to its Motion to Dismiss that are referred to in the Complaint, central to Makowski's claims and authentic, such documents are appropriately considered by this Court. Here, Bovis attaches to its Motion to Dismiss the:

1) Offer Letter it made to Makowski (Mot. Dismiss Ex. A., ECF No. 12-3);

2) Construction Contract for the construction project Makowski worked on (*Id*. Ex. B., ECF No. 12-4);

3) Project Bonus Plan (*Id*. Ex. C, ECF No. 12-5);

4) "Scorecard" for determining an employee's Annual Bonus (*Id*. Ex. D, ECF No. 12-6);

3

  5) Change Order #42 to the Construction Contract (*Id*. Ex. E, ECF No. 12-7);

  6) Separation Agreement it offered Makowski after terminating his employment (*Id*. Ex. F, ECF No. 12-8).

Notably, in his Opposition, Makowski fails to argue that any of these documents are not central to his Complaint. Indeed, each of these documents are integral to Makowski's legal claims, as their very existence give rise to the legal rights Makowski asserts. Thus, these documents are properly considered at the motion to dismiss stage, and do not require converting Bovis's motion into one for summary judgment. *See Fisher*, 2010 WL 2732334, at *2 (acknowledging that "courts have found integral . . . the documents that 'constitute the core of the parties' contractual relationship' in a breach of contract dispute.") (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 430-31 (7th Cir.1993)).

  Makowski also argues that these documents may not be considered at this stage because "Bovis fails to properly authenticate the documents it submits." Opp'n at 9, ECF No. 19. Makowski's challenge is rendered moot, however, by Bovis's subsequent inclusion of two affidavits authenticating the documents at issue. Reply at 3, ECF No. 20. Accordingly, given that Makowski makes detailed reference to each of the documents at issue in his Opposition, *see, e.g.,* Opposition at 12-15, 17-18, Makowski suffers no prejudice by this Court's decision to rely upon the documents Bovis attaches to its Motion to Dismiss.

BACKGROUND

  In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

  In May 2005, Defendant Bovis hired Makowski as a General Superintendent. Complaint ¶ 3; Mot. Dismiss Ex. A, ECF No. 12-3. In this position, Makowski was responsible for

managing and coordinating construction projects for Bovis. *Id*. Makowski's offer letter explains that he was entitled to an annual salary of $91,000, a company truck, and a gas credit card. *Id*. The offer letter does not mention payment of a bonus or severance. *Id*.

On July 1, 2005, Bovis enacted the Bovis Project Bonus Plan ("the Plan"). Mot. Dismiss Ex. C, ECF No. 12-5. The Plan provides two types of incentive bonuses, a "Client Funded Bonus" and a "Company Project Bonus," the purposes of which are "to motivate and retain highly talented project teams and reward positive performance in addition to reinforcing [Bovis's] values and goals around safety." *Id*. at 1. A Client Funded Bonus is paid by the client and negotiated within the contract between Bovis and the client. *Id*. at 5. A Company Project Bonus is provided when a client does not commit to offering a Client Funded Bonus or where the Client Funded Bonus is less than what would be payable under the Company Project Bonus. *Id*.; Compl. ¶ 3. A Client Funded Bonus is paid by the client and is "based upon things important to the owner, and the project, like meeting milestones, cost savings and safety targets." Mot. Dismiss Ex. C, ECF No. 12-5. A Company Project Bonus is similarly "rewarded based on project financial and safety goals," *id*. at 1, and is "intended to reward *team* results." *Id.* at 2 (emphasis in original).

Bovis also gives its employees the opportunity to become eligible for an Annual Incentive Compensation Bonus ("Annual Bonus"). Like the Company Project Bonus and Client Funded Bonus, an Annual Bonus is rewarded based upon meeting "financial, safety and individual targets." *Id*. at 5. Bovis's "scorecard" shows in detail the numerous factors that are considered when determining the amount of Annual Bonus to award an employee. Mot. Dismiss Ex. D, ECF No. 12-6. These factors include both the employee's individual performance and his project team's results, such as whether his team achieves a project's target profit. *Id*. at §§ 3-4.

An employee's Annual Bonus may be modified up to 25% in his manager's discretion. *Id*. at §
4.

On June 4, 2007, Bovis entered into a construction contract ("the Construction Contract") with 1203 Fidler Lane LLC ("the Client") to construct an apartment building in Silver Spring, Maryland called the Portico. Compl. ¶ 4; Mot. Dismiss Ex. B, ECF No. 12-4. Bovis assigned Makowski to work on the Portico as the General Superintendant of the Portico project team. Compl. ¶ 4. Makowski alleges that the Construction Contract provided that the Portico project team would be paid a Client Funded Bonus based upon the completion of certain construction milestones by dates specified in the contract. *Id*. After the Portico project team reached the first construction milestone, Makowski claims he earned and was paid his share of the first Client Funded Bonus, which amounted to $16,000, or 31% of the total Client Funded Bonus earned by his project team. *Id*.

Makowski alleges that based upon "Bovis' promises, actions and statements as to the payments of the Client Funded Bonus," he then worked "hundreds of hours of overtime and weekend hours to assure that the second construction milestone completion date would be accomplished." Compl. ¶ 5. He contends that "as a direct and proximate result of [his] efforts," Bovis met the second milestone, and therefore "Bovis's Project Team thus became entitled to the Client Funded Bonus as outlined in the Construction Contract." *Id*. ¶ 5. Makowski contends that in early November 2008, he and the other two members of the project team, the project manager and the project executive, calculated the total bonus they were due to be $280,997. *Id*. ¶ 6.

On January 7, 2009, Bovis and the Client initiated Change Order #42 to the Construction Contract, which provided that a bonus in the amount of $280,997 would be paid "to Contractor," i.e. Bovis, "by Owner," i.e. the Client, 1203 Fidler Lane LLC. Compl. ¶ 6; Mot. Dismiss Ex. E

at 2, ECF No. 12-7. At some point in January 2009, Bovis terminated certain members of the project team. Compl. ¶ 6. The Client signed Change Order #42 on February 3, 2009. *Id*. Makowski contends that he requested that the terminated Portico project team members be given their share of the Client Funded Bonus, but that Bovis refused to pay them. *Id*.

In July 2009, Makowski requested information as to the payment of the Client Funded Bonus. *Id*. ¶ 7. Makowski claims he was then told for the first time that there were "multiple requirements" regarding when and how the Client Funded Bonus would be paid that precluded the team members from receiving the bonus. *Id*. Makowski alleges that the so-called "multiple requirements" had to do with Bovis' Project Bonus Plan, and should not have affected the Client Funded Bonus. *Id*. On August 12 and 19, 2009, Makowski submitted written requests for a copy of all the written Bovis Bonus Plans, which he claims were ignored. Compl. ¶ 8. One week later, on August 27, 2009, Bovis terminated Makowski's employment as a part of a company-wide reduction in force. *Id*. Bovis offered Makowski a Separation Agreement, including severance pay and the opportunity to be paid his portion of any Annual Bonus and Project Bonus he would have been eligible for had he remained an active employee. Mot. Dismiss Ex. F, ECF No. 12-8. The Separation Agreement states, however, that severance payments and other potential benefits would only be provided "if [Makowski] agree[d] to and accept[ed] the terms of this Agreement and Release," the terms of which expired 45 days after his termination. *Id*. at 1. There is no indication that Makowski signed or accepted this severance agreement.

Makowski claims that Bovis failed and refused to pay him his earned portion of the Client Funded Bonus upon his termination. *Id*. ¶ 9. Furthermore, Makowski alleges that Bovis has refused to pay him the Annual Bonus and severance pay he earned pursuant to his

7

employment contract. *Id.* Accordingly, Makowski brings this action against Bovis for breach of contract (Count I), violation of the Maryland Payment and Collection Act (Count II), promissory estoppel/detrimental reliance (Count III), unjust enrichment (Count IV) and accounting (Count V).

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards*, 178 F.3d at 243.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

8

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## ANALYSIS

As the source of this Court's jurisdiction over this case is based on diversity of citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of Maryland to questions of substantive law.

**I.       Breach of Contract (Count I)**

In Count I, Makowski alleges that Bovis contracted with him to pay him the Client Funded Bonus, the Annual Bonus and severance pay, and breached its contract by failing to pay these wages. Compl. ¶¶ 12, 13. To state a claim for breach of contract in Maryland, a plaintiff must plead the existence of a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation. *RRC Northeast, LLC v. BAA Md., Inc.*, 994 A.2d 430, 434 (2010).

**A.       Client Funded Bonus**

The Complaint alleges that Bovis "contracted with Plaintiff, Makowski, to pay Makowski the [Client Funded] Bonus." Compl. ¶ 12. In response, Bovis argues that Makowski's claim fails because the Construction Contract providing for the Client Funded Bonus was between Bovis and the Client, not Bovis and Makowski. Mot. Dismiss at 8. Thus, Bovis contends, the Construction Contract cannot serve as a basis for Makowski's claim because he was not a party to that contract. *Id.* It is well established that privity of contract is an essential element of a cause of action for breach of contract, thus a contract cannot be enforced by one not a party to it. *See, e.g.*, *Ashe v. Giant of Md., L.L.C.*, No. 06-CV-1293, 2007 WL 7020451, at *6 (D. Md. July 17, 2007) ("Only a party to a contract can enforce that contract.") (citing *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322 (D. Md. 1983)). Thus, there must be a contract between the parties for there to be a breach.

Makowski's allegations are not sufficient to allege that there was any contract between him and Bovis for the Client Funded Bonus. Though Makowski generally alleges that Bovis contracted with him to pay him the Client Funded Bonus—as well as the Annual Bonus and severance pay, Compl. ¶ 12—he states in much more detail earlier in the Complaint that "Bovis entered into a general contract for construction with 1203 Fidler Lane LLC for a project known as the Portico in Silver Spring, Maryland," and that it was the Construction Contract that provided for the Client Funded Bonus. Compl. ¶ 4. Thus, Makowski's Complaint states on its face that the Construction Contract was between Bovis and the Client, not between Bovis and Makowski. Furthermore, the copy of the Construction Contract Bovis attached to its motion shows that it was negotiated by and between Bovis and the Client, and that only Bovis and the Client were signatories to the document. Mot. Dismiss Ex. B, ECF No. 12-4. Thus, Makowski cannot enforce the Construction Contract because he is not a party to that contract. Accordingly,

Makowski's breach of contract claim must be dismissed as it pertains to the Client Funded Bonus.

B. **Annual Bonus and Severance Pay**

In the Complaint, Makowski claims that Bovis refused to pay him the Annual Bonus and severance pay he earned "pursuant to [his] employment contract." Compl. ¶ 9. In response, Bovis counters that Makowski's breach of contract claim must fail because Makowski was an at will employee, and therefore did not have an employment contract with Bovis upon which he can base his claims. Bovis cites to its Offer Letter of Employment to Makowski, which specifically states that Makowski's employment was at will, and that either Makowski or Bovis could terminate their employment relationship at any time, for any reason. Mot. Dismiss Ex. A, ECF No. 12-1. In Maryland, where an employment relationship is at-will, either party may legally terminate the relationship at any time. *See Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464, 467 (Md. 1981).

Notably, Makowski's Opposition does not dispute that he was an at will employee. Though Makowski argues that Bovis agreed to pay him an Annual Bonus pursuant to his compensation agreement, Makowski never asserts that he received a compensation agreement that is separate and distinct from his Offer Letter. Instead, Makowski vaguely contends that Bovis has "fail[ed] to share with the Court other documents relating to Makowski's employment and his right to various forms of compensation." Opp'n at 12. This Court finds that these bare allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *See, e.g.*, *Triplett v. Structural Preservation Systems, Inc*. Civ. No. 05-298, 2005 WL 856669, at *1 (D. Md. April 13, 2005) (holding that plaintiff's allegations were insufficient to state a viable claim for breach of contract, and explaining that "in light of this provision of the letter [stating that plaintiff's employment was at will], it is extremely unlikely that plaintiff will be able to

frame allegations that do state a claim for breach of contract under Maryland law for nonpayment of his bonus."). Thus, given the provision in Makowski's Offer Letter stating that he is an at will employee, his allegations are insufficient to state a claim for breach of contract for nonpayment of his Annual Bonus or severance. Accordingly, Bovis's Motion to Dismiss is granted as to his breach of contract claim (Count I).

## II.     Maryland Wage Payment and Collection Act (Count II)

In Count II, Makowski alleges that Bovis violated the Maryland Wage Payment and Collection Law ("the Wage Act"), Md. Code Ann., Lab. & Employ., §§ 3-401, *et seq*., when it failed to pay him his portion of the Client Funded Bonus, Annual Bonus and severance pay. Determining whether the incentive bonuses and severance at issue are governed by the terms of the Wage Act requires a preliminary finding that the payments constitute "wages" under § 3-501(c). The statutory definition of wage is very broad:

> "(1) 'Wage' means all compensation that is due to an employee for employment.
>  (2) 'Wage' includes:
>       (i) a bonus;
>       (ii) a commission;
>       (iii) a fringe benefit; or
>       (iv) any other remuneration promised for service."

§ 3-501(c). The Court of Appeals of Maryland recently reiterated its bright-line test to determine whether a payment constitutes wages: "We turn to our bright-line test, as devised in *Whiting-Turner*[, 366 Md. 295 (2001)], which provides that only when wages have been promised as part of the compensation for the employment arrangement and all conditions agreed to in advance for earning those wages have been satisfied, will [the Wage Act] requiring payment of wages due apply." *Catalyst Health Solutions, Inc. v. Magill*, 995 A.2d 960, 969 (Md. 2010). Thus, when a payment is exchanged as remuneration for an employee's work *but also* subject to any additional unfulfilled promises or conditions, the payment falls outside of the definition of "wages."

Accordingly, this Court must determine whether Makowski has sufficiently alleged that he (1) as promised a Client Funded Bonus, Annual Bonus and severance pay as remuneration for his work, and (2) satisfied all the conditions agreed to in advance for earning that compensation.

      A.      **Client Funded Bonus and Annual Bonus**

Makowski seeks payment of the Client Funded Bonus and the Annual Bonus, which he alleges constitutes wages under the Wage Act. Compl. ¶ 10. As an initial matter, § 3-501(c)(2) expressly includes a "bonus" as an example of compensation that may fall within the ambit of the Wage Act. However, as the Court of Appeals of Maryland explained in *Medex v. McCabe*, 811 A.2d 297, 305 (Md. 2002), "in Maryland not all bonuses constitute wages," as "where the payments are dependent upon conditions other than the employee's efforts, they lie outside of the definition." *Medex*, 811 A.2d at 302 (citing *Whiting-Turner*, 783 A.2d at 671-72). The distinction between different categories of bonuses has been recognized by other courts interpreting wage payment statutes similar to Maryland's Wage Act. For example, in *Ferrari v. Keybank Nat. Ass'n*, No. 06-CV-6525, 2009 WL 35330, at *13 (W.D.N.Y. January 5, 2009), the United States District Court for the Western District of New York found that the plaintiff employees' annual compensation awards were not wages where the "Incentive Plan reflected a combination of individual, team and company performance," and where the defendant employer had sole discretion to modify performance objectives and incentive goals. The *Ferrari* Court explained that the annual compensation awards were not wages because they were "more in the nature of a profit-sharing arrangement and contingent and dependent, at least in part, on the financial success of the company." *Id.*; *see also Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind. 2004) (bonus to orthopedic surgeon based on billings to patients, less expenses, was not a wage because the employee's efforts were not the sole factor in calculating

bonus); *Truelove v. Northeast Capital & Advisory, Inc.,* 738 N.E.2d 770, 772 (N.Y. 2000) (excluding from statutory definition of a wage "certain forms of 'incentive compensation' that are more in the nature of a profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise" and the discretion of the employer); *Tischmann v. ITT/Sheraton Corp.,* 882 F. Supp. 1358, 1370 (S.D.N.Y. 1995) (bonus was not a wage where the employer could "determine what amount, if any, should be paid to a participating employee in addition to the regular guaranteed salary.").

In this case, Makowski's Complaint recognizes that the language of the Plan, just like the language of the Incentive Plan at issue in *Ferrari*, states that the Client Funded Bonus depends upon a combination of individual *and team* performance. For example, though Makowski alleges that his work was a direct and proximate cause of meeting the second milestone completion date on the Portico project, he acknowledges that meeting this milestone entitled his *entire project team* to a client funded bonus for their work, which was to be split between the three team members. Compl. ¶ 5. Thus, Makowski's effort was just one part in attaining the Client Funded Bonus, and that bonus was triggered by the effort of the whole Portico project team in achieving the second milestone completion date. Furthermore, the Plan's language states that a Client Funded Bonus is "based upon things important to the owner, and the project, like meeting milestones, cost savings and safety targets." Mot. Dismiss Ex. C, ECF No. 12-5. This wording clearly establishes that whether Makowski would receive a Client Funded Bonus depended upon conditions other than his own efforts. Accordingly, Makowski's Complaint does not and cannot allege facts sufficient to show that the Client Funded Bonus constitutes wages under the Wage Act.

As to the Annual Bonus, Makowski's Complaint makes almost no reference as to why he was eligible for the Annual Bonus, whether he actually met the requirements to receive such a bonus, and how the Annual Bonus constitutes wages under the Wage Act. Bovis, on the other hand, has submitted the Incentive Compensation Scorecard listing the various factors that are considered when determining whether an employee is owed an Annual Bonus. Mot. Dismiss, ECF No. 12-6. Among these qualifications are the overall performance of the office in which the employee worked, whether the employee's project team met the target profit for the project it worked on, and whether the project team completed the project on time. *Id*. As with the Client Funded Bonus, whether Makowski deserved his Annual Bonus depends on factors other than his own efforts. Thus, the Annual Bonus does not fall within the definition of wages under the Act.

### B. Severance Payments

Makowski also seeks severance payments that he claims he is owed and which he alleges are wages under the Wage Act. In Maryland, severance pay may constitute wages in certain cases. As the Maryland Court of Special Appeals held in *Stevenson v. Branch Banking & Trust Corp.*, 159 Md. App. 620 (Md. Ct. Spec. App. 2004), "the scope of Maryland's Wage Payment Act extends to the type of severance pay that represents deferred compensation for work performed during the employment." *Id*. 644; *see also Aronson & Co. v. Fetridge*, 181 Md. App. 650, 672 (Md. Ct. Spec. App. 2008). Notably, though *Stevenson* recognized that severance pay could constitute wages under some circumstances, the Court nonetheless found that the plaintiff's severance in that case did *not* constitute wages under the Wage Act. *Stevenson*, 181 Md. App. at 645-46. The Court emphasized that the Separation Agreement in that case based Stevenson's severance payment in part on her promise not to compete, and thus was not solely

based upon the work Stevenson performed before the termination of her employment as required by the Wage Act. *Id*.

In this case, Makowski does not provide any detail as to why he is owed severance payments, nor does he allege that he was promised severance payments in return for the work he performed. Instead, he simply states the legal conclusion that the severance pay he claims he is owed constitutes wages under the Wage Act. Compl. ¶ 10. In contrast, Bovis has supplied a copy of the Separation Agreement it offered Makowski, which reveals that (1) severance would only be paid if Makowski agreed to accept the terms of the Separation Agreement, (2) the offer to pay severance could be revoked at any point prior to Makowski's acceptance, and (3) the offer to pay severance expired within forty-five days if not accepted. Mot. Dismiss Ex. J, ECF No. 12-8

Makowski has not alleged that he accepted or signed any Separation Agreement. As in *Stevenson*, the Separation Agreement in this case offers the severance payment in exchange for certain promises made by Makowski, such as a release of claims against Bovis and a nondisclosure agreement. *Id*. at 3-5; *see contra*, *Mazer v. Safeway, Inc*., 398 F. Supp. 2d 412, 423 (D. Md. 2005) (finding that the severance payments at issue constituted wages under the Wage Act where "the plan description conditions eligibility for severance on an employee's performance before termination, not any actions in the future."). Thus, Makowski's right to severance payment was not solely based upon the work he performed before he was terminated as required under the Wage Act. As a result, Makowski's allegations that he is owed severance pay do not state sufficient facts to allege a claim under the Wage Act. Accordingly, Bovis's Motion to Dismiss is granted as to Makowski's claims under the Wage Act (Count II).

### III.    Promissory Estoppel/Detrimental Reliance (Count III)

In Count III, Makowski brings a claim for "promissory estoppel/detrimental reliance" solely as to the payment of the Client Funded Bonus. Under Maryland law, the elements of a claim for promissory estoppel are (1) a clear and definite promise by the defendant, (2) a reasonable expectation by the defendant that the promise will induce action or forbearance by the plaintiff, (3) the promise does induce actual and reasonable action or forbearance by the plaintiff, and (4) a resulting detriment to the plaintiff that can only be avoided by enforcement of the promise. *Holland v. Psychological Assessment Resources, Inc.*, No. 04-CV-437, 2004 WL 1368873, at *3 (D. Md. June 16, 2004) (citing *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.,* 674 A.2d 521, 531-32 (Md. 1996)).

At this stage of the proceedings, this Court is satisfied that Makowski has articulated a colorable claim for promissory estoppel and detrimental reliance. Makowski contends that, after receiving a Client Funded Bonus based in part on his hard work and the Portico project team meeting the first milestone, he worked "hundreds of hours of overtime and weekend hours" in reliance on Bovis's "promises, actions and statements" indicating that Makowski would earn a Client Funded Bonus if the subsequent milestones were met. Compl. ¶¶ 5, 19. As to the first prong of the promissory estoppel analysis, these allegations suffice to state a claim that Bovis made him a "clear and definite promise" that he would be paid a Client Funded Bonus if he put in extra effort that led to the completion of the milestones laid out in the Construction Contract. Bovis does not challenge prongs two and three, i.e. whether Makowski has alleged a reasonable expectation by the defendant that the promise would induce action, and whether Makowski has alleged that the promise did induce actual and reasonable action. Mot. Dismiss at 27-29. Finally, as to the fourth prong, Makowski has sufficiently asserted a resulting detriment by claiming that he worked overtime and weekend hours. Notably, the Offer Letter shows that

17

Makowski was getting paid a bi-weekly salary, thus he was not paid more for the extra hours he put in other than through his expected receipt of a Client Funded Bonus. Accordingly, this Court denies Bovis's Motion to Dismiss as to Makowski's promissory estoppel/detrimental reliance claim (Count III).

**IV.      Unjust Enrichment (Count IV)**

In Count IV, Makowski brings a claim for unjust enrichment against Bovis based upon its failure to pay him the Client Funded Bonus, the Annual Bonus and severance pay. Under Maryland law, an unjust enrichment claim requires three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Abt Assocs., Inc. v. JHPIEGO Corp.*, 104 F. Supp. 2d 523, 535 (D. Md. 2000). Makowski's claim states a cause of action for unjust enrichment as to the Client Funded Bonus, but not as to the Annual Bonus or the severance pay.

As to the Client Funded Bonus, as described above, Makowski claims that he worked hundreds of hours of overtime and weekend hours in order to enable the Portico project team to meet the second milestone, and that he did so with the expectation of receiving a portion of the Client Funded Bonus in return. Furthermore, Makowski claims that Bovis received and kept the $280,997 Client Funded Bonus for the Portico project, and has refused to pay him his earned portion of the bonus. Compl. ¶¶25-27. These allegations are sufficient to allege that Makowski conferred a benefit on Bovis, which it had knowledge of, and that its acceptance of such a bonus under such circumstances is inequitable.

As to the Annual Bonus and severance pay, however, Makowski has not claimed that he conferred any benefit upon Bovis specific to these two payments. On the contrary, Makowski has offered no colorable explanation as to why he is owed the Annual Bonus or severance pay. Accordingly, Bovis's Motion to Dismiss Makowski's unjust enrichment claim (Count IV) is denied as to his claim for payment of the Client Funded Bonus, but is granted as to his claims for payment of the Annual Bonus and severance pay.

## V.     Accounting (Count V)

Finally, Makowski brings a claim for an accounting of all the bonuses he alleges he is due. Compl. ¶ 31. As this Court has held, though, "an accounting is . . . a remedy, not a separate cause of action, and not available absent some independent cause of action." *IFAST, Ltd. v. Alliance for Telecomm. Indus. Solutions, Inc*., No. 06-CV-2088, 2007 WL 3224582, at *11 (D. Md. Sept. 27, 2007) (citing 1A C.J.S. Accounting § 6 (2007)). Furthermore, the Court of Special Appeals of Maryland has elucidated that, "it is now clear, moreover, that whereas an equitable claim for an accounting once served a necessary discovery function, that function has been superseded by modern rules of discovery." *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Com'rs*, 843 A.2d 252, 307-308 (Md. App. 2004). Thus, a claim for accounting is not cognizable as an independent cause of action. Accordingly, Bovis's Motion to Dismiss Makowski's accounting claim (Count V) is granted.

## CONCLUSION

For the reasons stated above, Defendant Bovis's Motion to Dismiss (ECF No. 12) is GRANTED as to Count I (breach of contract), Count II (Maryland Wage Payment and Collection Act), Count IV (unjust enrichment as to the Annual Bonus and severance pay), and

Count V (accounting), but DENIED as to Count III (promissory estoppel/detrimental reliance) and Count IV (unjust enrichment as to the Client Funded Bonus).

    A separate Order follows.

Dated: March 17, 2011                            /s/_____
                                                                Richard D. Bennett
                                                                United States District Judge